■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD HUDSON, Appellant. — Judgment of Supreme Court, Bronx County, rendered November 27, 1981 after jury trial before Fred W. Eggert, J., convicting defendant of robbery in the first degree and imposing an indeterminate sentence of 7-½ to 15 years, reversed, on the law and the facts, and the indictment dismissed. Ralph De Jesus, a candy truck operator who had operated his confectionary truck for over 10 years in the Castle Hill area of The Bronx, was murdered in the truck on an August evening in 1980, during the course of an alleged robbery. Three eyewitnesses testified to the crime. The evidence was overwhelming that codefendant Nelson Graham was the murderer and robber. Defendant is a brother of the girlfriend of Graham. Graham was convicted of fatally shooting De Jesus. Defendant was charged with acting in concert with others, in an indictment charging murder, robbery and criminal possession of a weapon. The prosecution charged defendant as the "look-out". He was acquitted of murder but convicted of robbery. The evidence was insufficient as a matter of law to support that conviction beyond a reasonable doubt. Witnesses placed defendant at the scene during the evening in question. Two of them (Earle and Cusimano) were standing within two or three feet of De Jesus' truck, and a third (Diaz) was standing about 20 yards away. As they described the action, four individuals approached the area together — defendant, codefendant Graham, codefendant Melvin Hudson (defendant's brother) and one Victor Crowel. Graham, who was wearing a stocking mask down to his forehead, handed a bottle of beer to defendant, pushed Cusimano (who was in the process of making a purchase) out of the way, and leaped into the truck through an open window. Shots rang out as Graham was observed searching around inside the truck, and defendant, standing nearby, outside the truck, was heard to yell, "Get out of the truck, clear out". Codefendant Melvin Hudson, seated on a bench nearby throughout the incident, was heard by one witness to say at one point, "The coast is clear". Graham was observed jumping out of the same window, carrying a gun in one hand and a small "garbage bag" in the other. Diaz testified that he recalled, from working with De Jesus years earlier, that De Jesus used to keep his money in such a bag. As Graham fled the scene, defendant pulled De Jesus' bleeding body out of the truck and laid him on the ground. Tempers flared in the confusion, and as Diaz attempted to draw near, defendant warded him off with the beer bottle still in his hand. Defendant was observed trying to help the victim, De Jesus, telling the gathering to step back and give De Jesus air to breathe. This is the extent of the eyewitness testimony linking defendant to this crime. The statements of these witnesses to the police, implicating defendant, leave much to be desired. Earle, who another witness said had been drinking, initially identified the shooter as another individual later determined to have an ironclad alibi. In subsequently identifying Graham, the Hudson brothers and Crowel as being involved in the incident, Earle explained that he had originally lied to the police because he had not wanted to get involved. Diaz initially identified

Crowel as one of Graham's accomplices, failing to select defendant from a photo array. Only in subsequent interviews was defendant's photograph selected independently by Diaz and Cusimano. The only other damaging testimony came from defendant's sister, Shelia Hudson. She testified at trial that she had happened upon the scene after hearing shots, and thought she saw her brother Melvin (not the defendant) running away from the truck with a brown paper bag in his hand. The fleeing figure was wearing a mask, but she stated for a certainty that it was not her boyfriend Graham. She also testified that she thought she heard defendant, her other brother, yell to brother Melvin "You got the money, now run", before defendant turned to assist the victim. This testimony is at variance with that of the other eyewitnesses, both as to the assertedly active participation of her brothers and the absolution of her boyfriend. A possible insight into Shelia's motivation for identifying her brother Melvin as the perpetrator of this crime may be found in her admission that she held a grudge against Melvin for having once given her a beating in a dispute over money. As to defendant's involvement in this family scene, Shelia testified at trial that the night her boyfriend Graham was arrested, defendant slapped her while asking why she had gone to the police about brother Melvin. Assuming her story to the police about Melvin (who was later acquitted of all charges) had been fabricated, this reaction on defendant's part was understandable, and certainly does not imply his own involvement in the crime. The bulk of the People's case was based upon the shaky testimony of Shelia Hudson. Carol Royall, who had known Shelia and the family for 10 years, testified that she spoke with Shelia right after the incident, during which conversation Shelia related that her boyfriend had admitted the crime to her. According to Royall, Shelia also stated at that time that defendant had been the lookout man. In trial testimony Shelia denied ever having such a conversation with Royall. Before the Grand Jury Shelia testified that defendant had admitted to her and her two sisters that he had been the lookout. These two sisters testified at trial that they had never discussed the incident with defendant. In fact, Shelia's testimony at trial on this point was consistent with that of her sisters. When confronted with her apparently contrary Grand Jury testimony, she stated that the Grand Jury must have misunderstood her answer. A third Hudson brother, who is a police officer in South Carolina, testified that in his conversations with Shelia before her Grand Jury appearance she told him she could not be sure that her brother Melvin had been the man emerging from the truck, because the perpetrator had worn a stocking mask covering his entire face. Examination of all the evidence against defendant demonstrates, in essence, no case at all, and certainly not guilt beyond a reasonable doubt. The statements and behavior attributed to defendant at the crime scene were at best equivocal, and certainly not incriminatory (see *People v Reyes*, 66 AD2d 753; *People v Valerio*, 64 AD2d 516). To review, defendant is alleged to have arrived at the scene with Graham, who was convicted of felony murder, defendant's brother Melvin, who was acquitted of all charges, and Crowel, who apparently was never indicted. As Graham independently commenced the robbery of De Jesus, defendant was heard to yell "Get out of the truck", plainly an equivocal statement. After Graham fled, defendant dragged the wounded victim from the truck and ministered to him and cautioned others to give De Jesus room to breathe, at one point even menacing an approaching bystander with the beer bottle defendant had received from Graham before the latter had entered the truck. Defendant made no attempt to leave the scene. Later, eyewitnesses at the scene identified defendant as one of the perpetrators, although no further acts evidencing defendant's participation in the crime were provided by these witnesses. Still later, defendant's sister, who was

Graham's girlfriend and who had apparently happened upon the crime scene as Graham made his getaway, was chided by defendant for having tentatively identified their brother, codefendant Melvin, against whom she held a grudge, as the perpetrator. Shelia's testimony was considerably eroded by the testimony of others, and was even contradicted by her own prior testimony before the Grand Jury. It is only in Shelia's discredited testimony that defendant is described as a lookout during the commission of this crime. This is certainly no foundation on which the People can rest their charge that defendant had "acted as the classic look-out". The prosecution's case against this defendant is sheer speculation. He came to the scene with three others. One, Graham, who carried out all the action, was convicted. Another, defendant's brother, was acquitted. The third, Crowel, was never indicted. There is no firm evidence that defendant "intentionally aided in some manner in the commission of" this crime (*People v Valerio, supra*, p 516). Aside from the acts and statements attributed to him by the discredited Shelia, all of defendant's behavior described by the witnesses was as consistent with innocence as with guilt. The fact that the jury acquitted defendant of the felony murder indicates their doubts. Although there is no repugnancy, as defendant claims, the verdict appears to be a compromise. As a matter of law there was insufficient evidence of defendant's guilt beyond a reasonable doubt of robbery in the first degree. Accordingly the judgment against defendant must be reversed and the indictment dismissed. Concur — Sandler, J. P., Carro, Fein, Milonas and Kassal, JJ.